Barry I. Levy (BL 2190)
Max Gershenoff (MG 4648)
Frank P. Tiscione (FT 5396)
RIVKIN RADLER LLP
926 RXR Plaza
Uniondale, New York 11556
(516) 357-3000

*Counsel for Plaintiffs Government Employees Insurance
Company, GEICO Indemnity Company, GEICO General
Insurance Company and GEICO Casualty Company*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X

GOVERNMENT EMPLOYEES INSURANCE
COMPANY, GEICO INDEMNITY COMPANY, GEICO
GENERAL INSURANCE  COMPANY and GEICO
CASUALTY COMPANY,

                         Plaintiffs,

          -against-

YEVGENIY MARGULIS, PH.D., CHANELLE
RICHARDS, PH.D., MARY OWENS, ANDRIY
KOSTYNYUK, COMPREHENSIVE PSYCHOLOGICAL
EVALUATION, P.C., AMERICAN PSYCHOLOGICAL
CARE, P.C., PSYCHOLOGY YME, P.C. a/k/a
PSYCHOLOGICAL YME, P.C., PSYCHOLOGICAL
EVALUATION & TESTING SERVICES, LLC and
REHAB PSYCHOLOGICAL SERVICES, P.C.,

                       Defendants.
--------------------------------------------------------------------X

Docket No.:_____ (    )

**Plaintiff Demands a Trial
by Jury**

## COMPLAINT

Plaintiffs Government Employees Insurance Company, GEICO Indemnity Company,

GEICO General Insurance Company and GEICO Casualty Company (collectively "GEICO" or

"Plaintiffs"), as and for their Complaint against the Defendants, hereby allege, upon information

and belief, as follows:

## NATURE OF THE ACTION

1.     This action seeks to recover more than $391.681.00 that the Defendants wrongfully have obtained from GEICO by submitting, and causing to be submitted, thousands of fraudulent charges for medically and psychologically unnecessary psychology services (i.e., diagnostic interviews, record evaluation, psychological testing, cognitive therapy sessions, and psychotherapy sessions) (collectively the "Fraudulent Services"). The Fraudulent Services purportedly have been rendered for diagnostic purposes to individuals ("Insureds") who were involved in automobile accidents and were eligible for insurance coverage under GEICO insurance policies. Succinctly:

    (i)     Defendants Yevgeniy Margulis, Ph.D. ("Margulis") and Chanelle Richards, Ph.D. ("Richards") have created a series of mirror-image professional entities – Defendants Comprehensive Psychological Evaluation, P.C. ("Comprehensive"), American Psychological Care, P.C. ("American"), Psychology YME, P.C. a/k/a Psychological YME, P.C. ("Psych YME"), Psychological Evaluation & Testing Services, LLC ("Psych Evaluation") and Rehab Psychological Services, P.C. ("Rehab") (collectively the "PC Defendants") – in order to establish vehicles through which fraudulent claims for no-fault reimbursement could be submitted to insurers, including GEICO; and

    (ii)     the Defendants unlawfully have paid kickbacks to other healthcare providers for patient referrals, and then have purported to subject Insureds to a battery of medically and psychologically unnecessary psychological services without regard for the Insureds' individual symptoms or presentment, solely in order to maximize the no-fault charges that the Defendants can submit to GEICO and other insurers.

2.     Accordingly, in addition to seeking more than $391,681.00 that the Defendants have stolen from GEICO, GEICO seeks a declaration that it is not obligated to pay reimbursement of more than $356,706.00 in pending fraudulent billing submitted by the Defendants through the PC Defendants because:

    (i)     the Fraudulent Services that are billed through the PC Defendants are not medically or psychologically necessary, and are performed – to the extent that

they are performed at all – pursuant to pre-determined fraudulent protocols designed solely to financially enrich the Defendants;

(ii)     in many cases, the Fraudulent Services that are billed through the PC Defendants are not provided in the first instance; and

(iii)    the Fraudulent Services that are billed through the PC Defendants are performed – to the extent that they are performed at all – pursuant to illegal kickback arrangements between the Defendants and the referring healthcare providers.

3.       The Defendants fall into the following categories:

(i)      The PC Defendants are New York psychology professional corporations and a New York limited liability company through which the Fraudulent Services purportedly have been performed and billed to New York automobile insurance companies, including GEICO.

(ii)     Defendant Margulis is a convicted felon who nonetheless is licensed to practice psychology in New York, has purported to own Comprehensive, American and Psych YME, has purported to perform many of the Fraudulent Services that have been billed through the PC Defendants to GEICO, and has been one of the architects and engineers of the Defendants' fraudulent scheme.

(iii)    Defendant Richards is a psychologist licensed to practice psychology in the State of New York, has purported to own Rehab and Psych Evaluation, has purported to perform many of the Fraudulent Services that are billed through Rehab and Psych Evaluation to GEICO, and is one of the architects and engineers of the Defendants' fraudulent scheme.

(iv)    Defendants Mary Owens ("Owens") and Andriy Kostynyuk ("Kostynyuk") (collectively the "Treating Defendants") are mental health counselors, and – together with Margulis and Richards – have purported to perform many of the Fraudulent Services that are billed through the PC Defendants to GEICO.

4.       As discussed below, the Defendants at all relevant times have known that: (i) the kickback arrangements with the referring healthcare providers are illegal and designed to provide the Defendants with the opportunity to bill GEICO and other insurers for medically and psychologically unnecessary services; (ii) the Fraudulent Services that are billed to GEICO through the PC Defendants are ordered, performed, and billed – to the extent that they are performed at all – pursuant to fraudulent, pre-determined protocols solely designed to maximize

charges to GEICO and other insurers, not because they are medically or psychologically necessary or designed to facilitate the treatment of or otherwise benefit the Insureds who are subjected to them; and (iii) the documents submitted by the Defendants in support of the charges for the Fraudulent Services, as well as the billing that the Defendants have submitted seeking payment from GEICO, are false and misleading in several material respects.

5.      As such, the Defendants do not now have, and never had, any right to be compensated for the bills they have submitted through the PC Defendants to GEICO and to other New York automobile insurers. The charts annexed hereto as Exhibits "1" through "5" summarize, in part, the fraudulent charges identified to date that the Defendants have submitted, or caused to be submitted, to GEICO.

<u>**THE PARTIES**</u>

**I.      <u>Plaintiffs</u>**

6.      Plaintiffs Government Employees Insurance Company, GEICO Indemnity Company, GEICO General Insurance Company, and GEICO Casualty Company are Maryland corporations with their principal places of business in Chevy Chase, Maryland. Plaintiffs are authorized to conduct business and to issue automobile insurance policies in New York.

**II.     <u>Defendants</u>**

7.      Defendant Margulis is a convicted felon who nonetheless is licensed to practice psychology in New York. Margulis obtained his New York psychology license on December 23, 1999. On or about December 5, 2006, the New York State Office of the Professions suspended Margulis' psychology license and fined Margulis after he was convicted of a felony in connection with false Medicaid filings. Margulis has purported to own Defendants Comprehensive, American, and Psych YME, and has purported to perform many of the

Fraudulent Services that have been billed through the PC Defendants to GEICO. Margulis resides in and is a citizen of New York.

8.      Defendant Richards is a psychologist who has been licensed to practice psychology in New York since February 9, 2007, and has purported to own Defendants Psych Evaluation and Rehab.  Richards has purported to perform many of the Fraudulent Services that have been billed through Rehab and Psych Evaluation to GEICO. Richards resides in and is a citizen of New York.

9.      Defendant Owens has a New York permit for mental health counseling and has purported to perform many of the Fraudulent Services that have been billed through the PC Defendants to GEICO. Owens resides in and is a citizen of New York.

10.      Defendant Kostynyuk is a New York licensed mental health counselor who received his license on December 23, 2010 and has purported to perform many of the Fraudulent Services that have been billed through the PC Defendants to GEICO. Kostynyuk resides in and is a citizen of New York.

11.      Defendant Comprehensive is a New York psychology professional service corporation with its principal place of business in New York.  Comprehensive was incorporated on or about February 14, 2000, and has served as a vehicle through which the Defendants have submitted claims for the Fraudulent Services to GEICO and other insurers.

12.      Defendant Psych Evaluation is a New York limited liability company with its principal place of business in New York.  Psych Evaluation was incorporated on or about February 23, 2007, and has served as a vehicle through which the Defendants have submitted claims for the Fraudulent Services to GEICO and other insurers.

13.     Defendant Psych YME is a New York psychology professional service corporation with its principal place of business in New York. Psych YME was incorporated on or about August 12, 2009, and has served as a vehicle through which the Defendants have submitted claims for the Fraudulent Services to GEICO and other insurers.

14.     Defendant American is a New York psychology professional service corporation with its principal place of business in New York. American was incorporated on or about May 26, 2010, and has served as a vehicle through which the Defendants have submitted claims for the Fraudulent Services to GEICO and other insurers.

15.     Defendant Rehab is a New York professional service corporation with its principal place of business in New York. Rehab was incorporated on or about December 7, 2011, and has served as a vehicle through which the Defendants have submitted claims for the Fraudulent Services to GEICO and other insurers.

## JURISDICTION AND VENUE

16.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1332(a)(1) because the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of different states. Pursuant to 28 U.S.C. § 1331, this Court also has jurisdiction over the claims brought under 18 U.S.C. §§ 1961 et seq. (the Racketeer Influenced and Corrupt Organizations ("RICO") Act) because they arise under the laws of the United States. In addition, this Court has supplemental jurisdiction over the subject matter of the claims asserted in this action pursuant to 28 U.S.C. § 1367.

17.     Venue in this District is appropriate pursuant to 28 U.S.C. § 1391, as the Eastern District of New York is the District where one or more of the Defendants reside and because this

is the District where a substantial amount of the activities forming the basis of the Complaint occurred.

## ALLEGATIONS COMMON TO ALL CLAIMS

### I.      An Overview of the No-Fault Laws

18.     GEICO underwrites automobile insurance in the State of New York.

19.     New York's no-fault laws are designed to ensure that injured victims of motor vehicle accidents have an efficient mechanism to pay for and receive the medically necessary healthcare services that they require. Under New York's Comprehensive Motor Vehicle Insurance Reparations Act (N.Y. Ins. Law §§ 5101 et seq.) and the regulations promulgated pursuant thereto (11 N.Y.C.R.R. §§ 65 et seq.) (collectively referred to hereinafter as the "No-Fault Laws"), automobile insurers are required to provide Personal Injury Protection Benefits ("No-Fault Benefits") to Insureds.

20.     No-Fault Benefits include up to $50,000.00 per Insured for necessary expenses incurred for healthcare goods and services.

21.     An Insured can assign his or her right to No-Fault Benefits to healthcare services providers in exchange for those services. Pursuant to a duly executed assignment, a healthcare services provider may submit claims directly to an insurance company and receive payment for medically necessary services that it provides, using the claim form required by the New York State Department of Insurance (known as the "Verification of Treatment by Attending Physician or Other Provider of Health Service," or, more commonly, as an "NF-3").

22.     The No-Fault Laws obligate individuals and healthcare providers that seek payment of No-Fault Benefits to provide insurers with additional verification in order to establish proof of their claims.

23.     The prescribed No-Fault policy endorsement set forth in 11 N.Y.C.R.R. § 65-1.1 provides, in pertinent part, that "[u]pon request by the Company, the eligible injured person or that person's assignee . . . shall … (b) as may reasonably be required, submit to an examination under oath by any person named by the Company, and shall subscribe to same . . . , and (d) provide any other pertinent information that may assist the Company in determining the amount that is payable."

24.     The prescribed No-Fault policy endorsement set forth in 11 N.Y.C.R.R. § 65-1.1 also states that "[n]o action shall lie against the Company, unless, as a condition precedent thereto, there shall have been full compliance with the terms of this coverage."

In addition, 11 N.Y.C.R.R. § 65-3.5 states, in pertinent part, that:

(i)     "Subsequent to the receipt of one or more of the completed verification forms, any additional verification required by the insurer to establish proof of claim shall be requested within 15 business days of receipt of the prescribed verification forms. Any requests by an insurer for additional verification need not be made on any prescribed or particular form. . . ."

(ii)    "The insurer is entitled to receive all items necessary to verify the claim directly from the parties from whom such verification was requested."

(iii)   "All examinations under oath . . . requested by the insurer shall be held at a place and time reasonably convenient to the applicant. . . . The insurer shall inform the applicant at the time the examination is scheduled that the applicant will be reimbursed for any loss of earnings and reasonable transportation expenses incurred in complying with the request.  When an insurer requires an examination under oath of an applicant to establish proof of claim, such requirement must be based upon the application of objective standards so that there is specific objective justification supporting the use of such examination. . . ."

25.     Because an examination under oath and provision of additional pertinent information necessary to verify a claim are conditions of coverage, an insurer may deny a healthcare provider's or individual's claim for No-Fault Benefits if the healthcare provider or

individual claimant refuses to appear for an examination under oath or refuses to provide pertinent information necessary to verify a claim.

26.    Pursuant to the No-Fault Laws, psychological healthcare service providers are not eligible to receive No-Fault Benefits if they pay kickbacks for their patient referrals, conduct which is prohibited by, <u>inter alia</u>, the New York Education Law, 8 N.Y.C.R.R. §§ 29.1 and 29.12.

27.    The implementing regulation adopted by the Superintendent of Insurance, 11 N.Y.C.R.R. § 65-3.16(a)(12), states, in pertinent part, as follows:

> A provider of healthcare services is not eligible for reimbursement under section 5102(a)(1) of the Insurance Law if the provider fails to meet <u>any</u> applicable New York State or local licensing requirement necessary to perform such service in New York . . . .

28.    Pursuant to New York State Insurance Law § 403, the NF-3s submitted by a healthcare provider to GEICO, and to all other automobile insurers, must be verified by the healthcare provider subject to the following warning:

> Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime.

## II.    <u>The Defendants' Fraudulent Treatment Protocol</u>

29.    The PC Defendants have no fixed places of business, do not maintain stand-alone practices, are not the owners or leaseholders in the real property from which they have operated, do not advertise for patients, and do not employ their own support staff.

30.    Rather, the PC Defendants have operated through a network of so-called "healthcare clinics" located throughout the greater New York City area (the "Clinics"). Though ostensibly organized to provide a range of healthcare services to Insureds at a single location, these Clinics in actuality are organized to supply convenient, one-stop shops for no-fault

insurance fraud. These Clinics have provided facilities for the PC Defendants, as well as – variously – one or more medical professional service corporations, chiropractic professional service corporations, acupuncture professional service corporations, dental professional service corporations, and/or physical therapy professional service corporations.  These Clinics operate from the following locations in the metropolitan area:

- 1 Cross Boulevard Plaza, Rosedale, New York

- 1034 Morris Avenue, Bronx, New York

- 148-43 Hillside Avenue, Jamaica, New York

- 1800 East 18th Street, Brooklyn, New York

- 2100 Flatbush Avenue, Brooklyn, New York

- 2511 Avenue I, Brooklyn, New York

- 2583 Ocean Avenue, Brooklyn, New York

- 4256 Bronx Boulevard, Bronx, New York

- 441 Lorimer, Brooklyn, New York

- 5504 Avenue N, Brooklyn, New York

- 786 Saratoga Avenue, Brooklyn, New York

- 762 Elmont Road, Elmont, New York

- 37-63 83rd Street, Jackson Heights, New York

- 2174 Flatbush Avenue, Brooklyn, New York

- 4419 3rd Avenue, Bronx, New York

- 60 West End Avenue, Brooklyn, New York

31.     The PC Defendants have gained access to these Clinics through payment of kickbacks from the Defendants. The kickbacks have been disguised as ostensibly legitimate fees

to "lease" space or personnel from the Clinics. In fact, these are "pay-to-play" arrangements that have caused the Clinics to provide access to Insureds and to steer the Insureds to the PC Defendants.

32.     In exchange for these kickbacks, when an Insured visits one of the Clinics, he or she automatically is referred to one of the PC Defendants for psychological treatments, regardless of individual symptoms, presentment, or – in virtually every case – the total absence of any psychological problems arising from any automobile accident.

33.     The referrals typically are made by a receptionist or some other non-medical personnel at the Clinics who simply direct or "steer" the Insureds to the PC Defendants' associates, who are given access to the Clinics' offices on a transient basis pursuant to the kickbacks provided by the Defendants.

34.     Every Insured who has been referred to one of the PC Defendants purportedly is subjected to a virtually-identical series of medically and psychologically unnecessary psychological examinations, tests, and treatments that have been provided – to the extent that they have been provided at all – pursuant to a pre-determined, fraudulent protocol.

35.     Each step in the fraudulent "treatment" protocol is billed to GEICO or other insurers, and is designed to falsely reinforce the rationale for the previous step and provide a false justification for the subsequent step. Specifically:

**A.      The Fraudulent "Diagnostic Interview Examination" and "Record Evaluation" Charges**

36.     Upon receiving a referral to one of the PC Defendants for psychological treatments, virtually every Insured purportedly is provided by the Defendants with an initial diagnostic interview examination.

37.     The diagnostic interview examinations then are billed by the Defendants to GEICO under current procedural terminology ("CPT") code 90801, typically resulting in a charge of $194.58, separate and independent of the other Fraudulent Services that the Insureds purportedly have received.

38.     The diagnostic interview examinations are fraudulent inasmuch as they are medically and psychologically unnecessary, and are conducted, to the extent that they are conducted at all, solely pursuant to the kickback arrangements between the Defendants and the Clinics and not pursuant to the documented and clinically reasonable needs of the Insureds. In fact, virtually every Insured who purportedly is subjected to the diagnostic interview examinations does not have any actual psychological complaints arising from automobile accidents.

39.     Even so, virtually every Insured who purportedly is subjected to the diagnostic interview examinations receives a pre-determined, boilerplate "diagnosis" of "posttraumatic stress disorder," "acute stress disorder" or "adjustment disorder" with or without "anxiety," "anxious mood," and/or "depressed mood," purportedly as the result of trauma incurred during an automobile accident. The Insureds receive these phony "diagnoses" regardless of their individual circumstances or unique presentment. In actuality, none of the Insureds actually suffers from "posttraumatic stress disorder," "acute stress disorder," "adjustment disorder," or any other legitimate psychological problems as the result of the minor automobile accidents they supposedly experience.

40.     According to the Diagnostic and Statistical Manual of Mental Disorders, 4th Edition (the "DSM-IV"), which is published by the American Psychiatric Association and provides a common language and standardized criteria for the classification of mental disorders,

a diagnosis of "posttraumatic stress disorder" or "acute stress disorder" requires – among other things – that the patient "experienced, witnessed, or was confronted with an event or events that involved actual or threatened death or serious injury, or a threat to the physical integrity of self or others." In addition, a posttraumatic stress disorder diagnosis requires that the patient's response "involved intense fear, helplessness, or horror."

41.    According to the DSM-IV, a diagnosis of "adjustment disorder" requires – among other things – the "development of emotional or behavioral symptoms in response to an identifiable stressor(s) occurring within 3 months of the onset of the stressor(s)," and likewise requires that the patient exhibit "marked distress that is in excess of what would be expected from exposure to the stressor" or "significant impairment in social or occupational (academic) functioning."

42.    Where an "adjustment disorder" diagnosis includes the "depressed mood" subspecification, the patient must manifest symptoms such as depressed mood, tearfulness, or feelings of hopelessness.

43.    Where an "adjustment disorder" diagnosis includes the "anxiety" subspecification, the patient must manifest symptoms such as nervousness, worry, or jitteriness.

44.    In virtually every claim for No-Fault Benefits submitted by or through the Defendants, the Insured allegedly was involved in a very minor accident involving a low-speed rear-end collision or a side-swipe. Most of the Insureds do not go to the hospital at all following the alleged accidents, and the minority of Insureds who do go to the hospital in virtually every case are briefly observed on an outpatient basis and sent on their way after an hour or two. These trivial "fender-benders" do not induce any form of "adjustment disorder" in the Insureds who purportedly experience them, much less "posttraumatic stress disorder" or "acute stress

disorder" – conditions typically associated with the abject horror of military combat, terrorist attacks, kidnapping or torture.

45.     In fact, these purported diagnoses are rendered solely to support additional charges to GEICO for unnecessary psychological services, in that – at the close of the diagnostic interview examinations – virtually every Insured is told to return to the PC Defendants for psychotherapy and psychological testing.

46.     In order to create the false appearance that the Defendants actually conduct the diagnostic interview examinations and that the Insureds actually suffer from some sort of legitimate psychological malaise, the Defendants routinely compile phony diagnostic interview examination reports and then submit them in support of their fraudulent billing.

47.     Virtually every diagnostic interview examination report submitted by the Defendants contains language that is duplicated across many other reports.  Only the Insureds' respective background information are unique to any particular patient. By contrast, large numbers putative "diagnostic interview examination" reports contained the following identical, boilerplate language – with identical, repetitive, idiosyncratic presentation – which is designed to support the Defendants' phony posttraumatic stress disorder, adjustment disorder, and acute stress disorder "diagnoses":

    (i)     "[Name of Insured] complained of deficits in attention and concentration while working on a problem or reading a book and newspapers or even trying to follow the plot of a TV movie. This kind of problem appeared soon after the car accident. No indications of amnesia were present. Short-term and long-term memories were both intact. There was no evidence of deficit in short-term and long-term memories. No indications of amnesia were presented. [sic] mildly impaired was evidenced in attention and concentration. [sic] [He/She] seemed to be too deep in to [sic] his thoughts and emotions."

    (ii)    "Other intellectual functions examined were within average limits. These functions included calculation, logical reasoning, figure reproduction, mental control, fund of information, and abstract reasoning. Abstract thinking showed

mild deficits which included inability to explain proverbs. No impairment was evidenced in simple computational skills. The patient's thought processes were orderly and effective. [His/Her] current intellectual functioning appears to be consistent with that evidenced prior to the onset of the present condition. Examination of perceptual processes did not reveal any perceptual dysfunctions."

(iii)   "The patient's predominant mood during the examination was anxiety, which was evident in the following symptoms: … [Name of Insured] has displayed excessive anxiety which [he/she] has had difficulty controlling."

(iv)   "The patient experiences intrusive thoughts and ideas. The content of [his/her] obsession is alien, not within [his/her] own control, and not the kind of thought [he/she] would expect to have. However, [he/she] understands that [his/her] obsessions are the product of [his/her] own mind and are not imposed from without. Usually [his/her] obsessions are repeated thoughts and images about the recent car accident that caused marked anxiety and distress."

Representative examples of the Defendants' phony diagnostic interview examination reports containing this identical, boilerplate language are annexed hereto as Exhibit "6".

48.    It is clear that the Defendants draw from a "stock" of language from pre-existing diagnostic interview examination reports that they randomly assemble and combine with the Insureds' claim information to create the impression that the "diagnostic interview examinations" actually are properly performed.  In fact, they either are not performed at all, or are not meant to have any benefit for the Insureds, and are only conducted for the financial benefit of the Defendants.

49.    Not only do the Defendants submit fraudulent billing for the diagnostic interview examinations, they also "unbundle" the charges in virtually every instance in order to maximize the fraudulent billing they can submit, or cause to be submitted, to GEICO.

50.    For instance, for virtually every Insured, on the same dates that they submit charges for the diagnostic interview examinations, the Defendants submit separate charges of $67.00 or $67.24 under CPT code 90885. The use of CPT code 90885 represents that a psychologist conducted "psychiatric evaluation of hospital records, other psychiatric reports,

psychometric and/or projective tests, and other accumulated data for medical diagnostic purposes." The Defendants submit these charges despite the fact that review and evaluation of the Insureds' medical and psychological records is necessary to, and already is reimbursed as an element of, the Insureds' diagnostic interview examinations. In other words, healthcare providers cannot conduct and bill for a diagnostic interview examination, then bill separately for contemporaneously-provided medical or psychological record reviews.

51.     Furthermore, the Defendants' charges under CPT code 90885 for record review and evaluation are fraudulent inasmuch as no psychologists or mental health counselors associated with the PC Defendants ever review or evaluate any records to support the charges.

52.     Indeed, most of the "record evaluation reports" that the Defendants submit through the PC Defendants in support of their billing for the purported record evaluations simply include a blank space following the words "The following records and accumulated [sic] were available for my review", indicating that the Defendants do not actually conduct any record review or evaluation. Representative examples of the Defendants' phony "record evaluation reports" are annexed hereto as Exhibit "7".

53.     Furthermore, virtually every record evaluation report that the Defendants submit in support of their fraudulent billing under CPT code 90885 contains language that is duplicated across many other reports. Only the Insureds' respective background information is unique to any particular patient.  By contrast, in almost every case, the remainder of the record evaluation report consists of boilerplate language that is cut-and-pasted from one Insured's report into the reports regarding many other Insureds.

54.    For instance, large numbers of purported record evaluation reports submitted by or through the Defendants include the following, identical language – including identical, idiosyncratic grammar:

(i)    "Based upon the evaluated records I have come [sic] the following conclusion."

(ii)    "The reviewed medical records confirmed that [Name of Insured] was subjected to a Motor Vehicle Accident on [Date of Accident]. Subsequently [he/she] has developed a number of physical and psychological injuries. [His/Her] referring physician, [Name of Physician], prescribed a regimen of physical therapy, chiropractic treatment and acupuncture to treat the physical injuries sustained by [him/her] in this accident."

(iii)    "Diagnoses: Physical injuries related to trauma. However, patient also complains of emotional and cognitive disturbances since the accident in question.  These accident related complaints may be indicative of the existence of underlying psychological and emotional factors, which are interfering with [Name of Insured] functionality (regarding the completion of even the simplest everyday task) and warrant [his/her] psychological examination."

See Exhibit "7".

55.    It is clear that the Defendants draw from a "stock" of language from pre-existing record evaluation reports that they randomly assemble and combine with the Insureds' claim information to create the impression that the "record evaluations" actually are properly performed.  In fact, they either are not performed at all, or are not meant to have any benefit for the Insureds, and are only conducted for the financial benefit of the Defendants.

**B.    The Fraudulent Initial "Psychotherapy" Charges**

56.    Based upon the fraudulent, pre-determined outcome of the diagnostic interview examinations, the Defendants tell virtually every Insured to return for multiple, unnecessary psychotherapy sessions.  In most cases, one of the Treating Defendants, Richards, or Margulis purports to perform the psychotherapy.

57.     The initial psychotherapy sessions for each Insured typically have been conducted, to the extent that they have been conducted at all, on the same day as the diagnostic interview examinations and medical/psychological record reviews and evaluations. These supposed initial psychotherapy sessions usually are billed by the Defendants to GEICO under CPT code 90804, resulting in a charge of $76.00 or $76.88 per Insured, per session.

58.     The charges for these initial psychotherapy sessions are fraudulent inasmuch as they are duplicative of the charges that the Defendants submit, or caused to be submitted, on the same dates for the putative diagnostic interview examinations. In fact, neither Margulis, Richards, the Treating Defendants, nor any other psychologist or mental health counselor associated with the PC Defendants, ever conducts the initial psychotherapy sessions that have been billed to GEICO. Rather, the Defendants simply bill GEICO twice for the purported first encounter between a psychologist and each Insured: Once under CPT code 90801, labeling the meeting as a "diagnostic interview examination," and a second time, usually under CPT code 90804, labeling the meeting as "psychotherapy."

59.     The charges for these initial psychotherapy sessions also are fraudulent because – according to the New York Workers' Compensation Fee Schedule, which is applicable to claims for No-Fault Benefits (the "Fee Schedule") – the use of CPT code 90804 requires that the psychologist spend between 20-30 minutes face-to-face with the Insured. The Defendants' use of CPT code 90804 with respect to the initial psychotherapy sessions materially misrepresents and exaggerates the level of services that are provided, in that neither Margulis, Richards, the Treating Defendants, nor any other psychologists associated with the PC Defendants, spend any time conducting the initial psychotherapy sessions with the Insureds.

60.     In addition, the charges for these initial psychotherapy sessions are fraudulent because the sessions are medically and psychologically unnecessary. Though the charges supposedly are justified by the boilerplate, pre-determined "diagnosis" of "adjustment disorder," "acute stress disorder" or "posttraumatic stress disorder," the Insureds do not suffer from "adjustment disorder," "acute stress disorder," "posttraumatic stress disorder," or any other legitimate psychological problems as the result of the minor, low-speed, low impact fender benders they supposedly experience.

61.     Rather, like the Defendants' charges for the diagnostic interview examinations, the Defendants' charges for the initial psychotherapy are fraudulent in that it is medically and psychologically unnecessary, and has been conducted, to the extent that it has been conducted at all, solely pursuant to the kickback arrangements between the Defendants and the Clinics – virtually every Insured who purportedly has been subjected to the psychotherapy does not have any actual psychological complaints arising from automobile accidents.

62.     Furthermore, the charges for these initial psychotherapy sessions are fraudulent in that the outcomes are pre-determined, and not tailored to any Insured's unique circumstances. Specifically, at the conclusion of each Insured's first encounter with a psychologist, whether labeled as a diagnostic interview examination, psychotherapy, or both, the Insureds virtually always are told to return to the PC Defendants for further psychotherapy sessions and psychological testing.

**C.     The Fraudulent Follow-Up "Psychotherapy" Charges**

63.     Based upon the fraudulent, pre-determined outcome of the diagnostic interview examinations/initial psychotherapy sessions, and the phony "adjustment disorder," "acute stress

disorder," and "posttraumatic stress disorder" diagnoses, the Defendants have purported to provide virtually every Insured with follow-up psychotherapy sessions.

64.    These follow-up psychotherapy sessions usually are billed by the Defendants to GEICO under CPT code 90806, resulting in a charge of $120.00 or $120.10 per Insured, per session, CPT code 90812, resulting in a charge of $129.00 or $130.00 per Insured, per session, or 90804, resulting in a charge of $76.00 per Insured, per session.

65.    Like the Defendants' charges for the diagnostic interview examinations and initial psychotherapy sessions, the Defendants' charges for the follow-up psychotherapy are fraudulent in that it is medically and psychologically unnecessary, and has been conducted, to the extent that it has been conducted at all, solely pursuant to the kickback arrangements between the Defendants and the Clinics – virtually every Insured who purportedly has been subjected to the psychotherapy does not have any actual psychological complaints arising from automobile accidents.

66.    The charges for these follow-up psychotherapy sessions also are fraudulent because – according to the Fee Schedule – the use of CPT code 90806 or 90812 requires that the psychologist spend between 45-50 minutes face-to-face with the Insured, and the use of CPT code 90804 requires that the psychologist spend between 20-30 minutes face-to-face with the Insured. The Defendants' use of CPT code 90806, 90812, and 90804 with respect to the follow-up psychotherapy sessions materially misrepresents and exaggerates the level of services that have been provided, in that neither Margulis, Richards, the Treating Defendants, nor any other psychologist or mental health counselor associated with the PC Defendants, spends 20-30 minutes face-to-face with the Insureds, much less 45-50 minutes.

**D.      The Fraudulent "Psychological Testing" Charges**

67.      Based upon the fraudulent, pre-determined outcome of the diagnostic interview examinations/initial psychotherapy sessions, and the phony "posttraumatic stress disorder," "acute stress disorder," and "adjustment disorder" diagnoses, the Defendants – with the exception of American – also purport to provide a battery of medically and psychologically useless psychological tests to virtually every Insured.

68.      Prior to 2006, the Defendants charged GEICO and other insurers for the psychological testing under CPT code 96100, generally for five and one-half hours of testing at a rate of $139.41 per hour. This resulted in routine charges of $766.60 per Insured.

69.      In 2006, CPT code 96100 was eliminated and replaced with – among other things – CPT code 96101, covering psychological testing conducted by a psychologist.

70.      Since 2006, the Defendants have charged GEICO and other insurers for the psychological testing under CPT code 96101, virtually always for between three to five hours of testing at a rate of $184.00, $184.64, $186.43 or $185.00 per hour. This results in typical charges ranging from $552.00 to $925.00 per Insured.

71.      Furthermore, when submitting their billing for the psychological testing, the Defendants – with the exception of American – generally submit a separate, additional charge of $85.00 under CPT code 96102 for the purported technical aspects of the psychological testing.

72.      The psychological testing is fraudulent inasmuch as it is medically and psychologically unnecessary, and is conducted, to the extent that it is conducted at all, pursuant to a pre-determined fraudulent treatment protocol and the kickback arrangements between the Defendants and Clinics, not pursuant to the documented and clinically-reasonable needs of the Insureds, or to benefit the Insureds who supposedly are subjected to it.

73.     In keeping with this fraudulent treatment protocol, the Defendants purport to provide an identical battery of psychological tests to virtually every Insured, without regard for their individual circumstances or presentment. Specifically, the Defendants have purported to provide virtually every Insured with the following psychological tests:

(i)     Personal Injury Questionnaire;

(ii)    Davidson Trauma Scale;

(iii)   Profile of Mood States; and

(iv)    Miller Forensic Assessment of Symptoms.

74.     The Defendants also have purported to provide many Insureds with the following, additional psychological tests:

(i)     Sleep Impairment Index;

(ii)    Travel Anxiety Questionnaire;

(iii)   Patient Accident Report; and

(iv)    Short Form McGill Pain Questionnaire.

75.     These tests are nothing more than a handful of pre-printed checklists and brief screening instruments that are filled out by the Insureds or the Defendants, on which check-marks are placed next to the psychological symptoms the Insureds purportedly experience. However, the Defendants already take a detailed symptomatology from each Insured during the diagnostic interview examinations/initial psychotherapy sessions, and in many cases the follow-up psychotherapy sessions, which in virtually every instance precede the testing – to the limited extent that any of these procedures actually are performed at all. Accordingly, the tests are duplicative, unnecessary, and are provided – to the extent they are provided at all – solely to enrich the Defendants, not to benefit the Insureds who were subjected to them.

76.     Furthermore, the Defendants' charges for the psychological testing are fraudulent because – notwithstanding the Defendants' misrepresentations that the tests virtually always take three to five hours to perform – the tests never take more than one hour to administer, score, and interpret, to the extent that they are performed in the first instance.

77.     The Defendants' purported use of psychological tests – to the extent that they actually provide the tests in the first instance – stands in marked contrast to the standard of care in basic, legitimate psychological practice. For instance:

(i)     The Defendants often purport to provide the psychological tests within days or a few weeks of the underlying accident. Self-reporting psychological tests, however, generally should not be administered unless and until a psychologist assesses a patient over a period of time to determine the patient's psychological functioning.

(ii)    Under generally accepted standards and practices, a diagnostic interview examination alone should be sufficiently comprehensive to address all of the issues discernable from the types of self-reporting psychological tests that the Defendants purport to provide. Psychological testing of the kind allegedly administered by the Defendants is only medically or psychologically necessary when a diagnosis is not evident from a diagnostic interview and the psychological testing will yield relevant additional clinical data beyond that obtained through the diagnostic interview. However, the diagnostic interview examinations that the Defendants have purported to provide not only yield sufficient clinical data to provide a diagnosis, but the Defendants actually do purport to provide diagnoses – albeit false ones – following each diagnostic interview examination.

(iii)   The Defendants do not employ a sufficient number of tests to yield the diagnoses contained in their reports – the majority of the tests administered under the direction of the Defendants are "subjective" self-reporting questionnaires, which merely report symptoms or complaints of the Insureds, and do not provide sufficient data for any objective psychological assessment of the Insureds.

78.     Not only do the Defendants deliberately bill for duplicative, medically-unnecessary psychological testing, but Margulis, the Treating Defendants, Comprehensive and Psych YME in many cases also unbundle their charges for the tests in order to maximize the fraudulent charges that they could submit, or cause to be submitted, to GEICO.

79.     Specifically, when submitting their billing for the psychological testing, Margulis, the Treating Defendants, Comprehensive and Psych YME frequently submit a separate charge of $103.31 or $104.00 under CPT code 90887 for the "interpretation or explanation" of the results of the psychological testing to the Insureds' families or other responsible persons. However, neither the Treating Defendants, Margulis, nor any other individuals associated with the PC Defendants ever interpret or explain the test results to the Insureds' family members or other responsible persons. Even if they had, the charges for such "interpretation and explanation" would be part and parcel of the charges that the Defendants submitted for the tests under CPT codes 96100, 96101, and 96102.

80.     The Defendants' charges for the psychological testing also are fraudulent in that the use of CPT codes 96100, 96101, and 96102 represents that the psychologists administering the psychological tests have prepared a written report interpreting the test results. Though the Defendants routinely bill for the psychological tests under CPT codes 96100, 96101, and 96102, and though the Defendants submit what purport to be interpretive test reports in support of their billing, neither Margulis, Richards, the Testing Defendants, nor any other psychologists associated with the PC Defendants ever prepare any genuine written reports interpreting the test results.

81.     Rather, the Defendants simply cobble the psychological testing reports together using boilerplate language from pre-existing reports, without any interpretive input from Margulis, Richards, the Testing Defendants, or any other psychologists.

82.     Virtually every psychological testing report submitted by the Defendants in support of the PC Defendants' billing contains language that is duplicated across many other reports.  Only the Insureds' respective background information and "psychological test" scores

are unique to any particular patient. By contrast, in almost every case, the stated purpose of the "tests," the rationale for using specific test instruments, the respective Insureds' attitudes toward test taking, and the resulting prognoses have consisted of boilerplate language that is cut-and-pasted from one Insured's testing report into the reports of many other Insureds.

83.     For example, large numbers of purported psychological testing reports submitted by or through the Defendants have included the following, identical language – including identical, idiosyncratic grammar and punctuation as noted:

(i)     "There appears to be, as a result of reported symptoms, significant deterioration in the [Name of Insured] psychological/emotional functioning. [He/She] completed the following psychological tests after the Diagnostic Interview: Personal Injury Quistionaire [sic] . . . ."

(ii)    "Summary and Overview: As is customary for all patients who receive a psychological evaluation due to post accident trauma, [Name of Insured] completed the following widely used objective clinical tests: Personal Injury Quistionnaire [sic] (PIQ), Davidson Trauma Scale (DTS), Profile of Mood States (POMS) and Miller Forensic Assessment of Symptoms Test (M-FAST). These test instruments were utilized to assess the broad spectrum of possible reactions to a traumatic incident, and the results follow. [His/Her] scores on these measures indicate [his/her] degree of adaptation to [his/her] accident related illnesses and their behavioral consequences."

(iii)   Recommendations and Goals: [Name of Insured] responses in the interview and testing indicate acknowledgment of important problems and the perception of a need for help in dealing with these problems. [She/He] reports a positive attitude towards the possibility of personal change, the value of therapy, and the importance of personal responsibility.  In addition, [she/he] reports a number of other strengths that are positive indications for a relatively smooth treatment process and reasonably good prognosis.  In light of these factors, Brief Integrative Psychotherapy is recommended, which is detailed below."

(iv)    "Prognosis . . .  Presented results suggest that the patient would benefit from continued psychotherapy in order to reduce the symptoms of and to teach adaptive skills that might improve . . . coping and stress-management skills."

Representative examples of the Defendants' phony psychological testing reports containing this identical, boilerplate language are annexed hereto as Exhibit "8".

84.     It is clear that the Defendants draw from a "stock" of language from pre-existing psychological testing reports that they randomly assemble and combine with the Insureds' claim information to create the impression that the "psychological testing" sessions actually are performed.  In fact, either they are not performed at all, or are not meant to have any benefit for the Insureds that are subjected to them, and only are conducted for the financial benefit of the Defendants.

**E.      The Fraudulent Billing for Cognitive Therapy Sessions**

85.     Based upon the fraudulent, pre-determined outcome of the diagnostic interview examinations/initial psychotherapy sessions, and the phony "posttraumatic stress disorder," "acute stress disorder," and "adjustment disorder" diagnoses, the Defendants also purport to provide most Insureds with at least 15-30 minutes of cognitive therapy.

86.     The Defendants then bill the cognitive therapy to GEICO and other insurers as multiple charges under CPT code 97532, typically resulting in total charges of $84.00 per Insured, per date of service.

87.     The Defendants' charges for the cognitive therapy are fraudulent in that it is medically and psychologically unnecessary, and is conducted, to the extent that it is conducted at all, pursuant to a pre-determined fraudulent treatment protocol and the kickback arrangements between the Defendants and Clinics, not pursuant to the documented and clinically-reasonable needs of the Insureds, or to benefit the Insureds who supposedly are subjected to it.

88.     In fact, almost none of the Insureds require cognitive therapy as the result of the relatively minor automobile accidents they purportedly experience.

89.     The Defendants' charges for the cognitive therapy also are fraudulent in that the use of CPT code 97532 represents that the psychologist has spent 15 minutes of direct, face-to-

face time with the Insured conducting the cognitive therapy. Though the Defendants typically submit two charges under CPT code 97532 for each Insured on each date when they purport to provide cognitive therapy – and thereby represent that a psychologist has spent 30 minutes on each cognitive therapy session – neither Margulis, Richards, the Testing Defendants, nor any other psychologists associated with the PC Defendants ever spends any time providing any cognitive therapy to the Insureds.

**F.** **The Fraudulent Billing For Services That Never are Provided in the First Instance**

90.     In many cases, the Defendants do not perform the Fraudulent Services at all, and simply create and submit billing to GEICO for services that never are provided in the first instance.

91.     In keeping with the fact that the Defendants frequently do not perform the Fraudulent Services at all, the Defendants routinely bill GEICO for an implausible or, in many cases, an impossible number of services allegedly performed by a single individual on a single date of service. For instance:

(i)     On July 9, 2009, at four different Comprehensive locations, Margulis purportedly conducted: (a) seven 20-30 minute psychotherapy sessions; (b) three 45-50 minute psychotherapy sessions; (c) three diagnostic interview examinations, which if legitimate would require at least two hours to perform; (d) three record evaluations, which if legitimate would require at least an hour and a half to perform; and (e) 20 hours of psychological testing, all of which were billed to GEICO. Though Margulis purportedly performed more than 28 hours of psychology services on July 9, 2009 for GEICO Insureds, alone, in actuality these services were not provided, and the Defendants simply submitted phony billing for the services in order to defraud GEICO into paying for the services.

(ii)    On July 23, 2009, at four different Comprehensive locations, Margulis purportedly conducted: (a) seven 20-30 minute psychotherapy sessions; (b) one 45-50 minute psychotherapy session; (c) two diagnostic interview examinations, which if legitimate would require at least an hour and a half to perform; (d) two record evaluations, which if legitimate would require at least an hour to perform; (e) 25 hours of psychological testing; and (f) two 15-minute cognitive therapy sessions,

all of which were billed to GEICO. Though Margulis purportedly performed more than 30 hours of psychology services on July 9, 2009 for GEICO Insureds, alone, in actuality these services were not provided, and the Defendants simply submitted phony billing for the services in order to defraud GEICO into paying for the services.

(iii)   On August 26, 2009, at Psych YME, Margulis purportedly conducted 10 hours of psychological testing, all of which was billed to GEICO. Then, Margulis purportedly traveled over to Comprehensive, where he supposedly performed an additional: (a) five hours of psychological testing; (b) two 20-30 minute psychotherapy sessions; and (c) one 45-50 minute psychotherapy session, which likewise were billed to GEICO. Though Margulis purportedly performed more than 16 hours of psychology services on August 26, 2009 for GEICO Insureds, alone, in actuality these services were not provided, and the Defendants simply submitted phony billing for the services in order to defraud GEICO into paying for the services.

(iv)   On August 27, 2009, at three different Comprehensive locations, Margulis purportedly conducted: (a) five 20-30 minute psychotherapy sessions; (b) four 45-50 minute psychotherapy sessions; and (c) 15 hours of psychological testing, all of which were billed to GEICO. Though Margulis purportedly performed more than 19 hours of psychology services on August 27, 2009 for GEICO Insureds, alone, in actuality these services were not provided, and the Defendants simply submitted phony billing for the services in order to defraud GEICO into paying for the services.

(v)   On September 11, 2009, at Psych YME, Margulis purportedly conducted 10 hours of psychological testing, all of which was billed to GEICO. Then, Margulis purportedly traveled over to Comprehensive, where he supposedly performed an additional: (a) five hours of psychological testing; and (b) three 20-30 minute psychotherapy sessions, which likewise were billed to GEICO. Though Margulis purportedly performed more than 16 hours of psychology services on September 11, 2009 for GEICO Insureds, alone, in actuality these services were not provided, and the Defendants simply submitted phony billing for the services in order to defraud GEICO into paying for the services.

(vi)   On February 24, 2010, at Psych YME, Kostynyuk  purportedly conducted: (a) one 20-30 minute psychotherapy session; (b) one diagnostic interview examination, which if legitimate would require at least 40 minutes to perform; and (c) one record evaluation, which if legitimate would require at least half an hour to perform, all of which were billed to GEICO. Then, Kostynyuk  purportedly traveled over to Comprehensive, where he supposedly performed an additional: (a) two 20-30 minute psychotherapy sessions; and (b) eight hours of psychological testing, which likewise were billed to GEICO. Though Kostynyuk purportedly performed more than 10 hours of psychology services on February 24, 2010 for GEICO Insureds, alone, in actuality these services were not provided,

and the Defendants simply submitted phony billing for the services in order to defraud GEICO into paying for the services.

(vii)    On December 14, 2011, at Psych Evaluation, Kostynyuk purportedly conducted: (a) 9 20-30 minute psychotherapy sessions; (b) two diagnostic interview examinations, which if legitimate would require at least an hour and 20 minutes to perform; (c) two record evaluations, which if legitimate would require at least an hour to perform; (d) six hours of psychological testing; and (e) two 15-minute cognitive therapy sessions, all of which were billed to GEICO. Then, Kostynyuk purportedly traveled over to Rehab, where he supposedly performed an additional 20-30 minute psychotherapy session, which likewise was billed to GEICO. Though Kostynyuk purportedly performed more than 12 hours of psychology services on December 14, 2011 for GEICO Insureds, alone, in actuality these services were not provided, and the Defendants simply submitted phony billing for the services in order to defraud GEICO into paying for the services.

(viii)    On December 19, 2011, at Psych Evaluation, Kostynyuk purportedly conducted: (a) 11 20-30 minute psychotherapy sessions; (b) three diagnostic interview examinations, which if legitimate would require at least two hours to perform; (c) three record evaluations, which if legitimate would require at least an hour and a half to perform; (d) eight hours of psychological testing; and (e) one 15-minute cognitive therapy session, all of which were billed to GEICO. Though Kostynyuk purportedly performed at least 15 hours of services on December 19, 2011 for GEICO Insureds, alone, in actuality these services were not provided, and the Defendants simply submitted phony billing for the services in order to defraud GEICO into paying for the services.

(ix)    On January 11, 2012, at Rehab, Kostynyuk purportedly conducted: (a) six 20-30 minute psychotherapy sessions; (b) one diagnostic interview examination, which if legitimate would require at least 40 minutes to perform; (c) one record evaluation, which if legitimate would require at least 30 minutes to perform; and (d) eight hours of psychological testing, all of which were billed to GEICO. Though Kostynyuk purportedly performed more than 11 hours of services on January 11, 2012 for GEICO Insureds, alone, in actuality these services were not provided, and the Defendants simply submitted phony billing for the services in order to defraud GEICO into paying for the services.

(x)    On January 18, 2012, at Rehab, Kostynyuk purportedly conducted: (a) 10 20-30 minute psychotherapy sessions; (b) one diagnostic interview examination, which if legitimate would require at least 40 minutes to perform; (c) one record evaluation, which if legitimate would require at least 30 minutes to perform; (d) five hours of psychological testing; and (e) two 15-minute cognitive therapy sessions, all of which were billed to GEICO. Though Kostynyuk purportedly performed at least 10 hours of services on January 18, 2012 for GEICO Insureds, alone, in actuality these services were not provided, and the Defendants simply submitted phony billing for the services in order to defraud GEICO into paying for the services.

92.     The Defendants' billing for an implausible or, in many cases, impossible number of services allegedly performed by a single individual on a single date of service is underscored by the fact that the examples set forth, above, include only those services that the Defendants billed to GEICO. Upon information and belief, the Defendants routinely billed other insurers for an implausible or impossible number of services on the same dates when they billed an implausible or impossible number of services to GEICO.

93.     The Defendants routinely create fraudulent billing for services that never are provided in the first instance, and then submit it to GEICO and other insurers, in order to steal money from GEICO and other insurers.

**IV.     The Fraudulent NF-3 Forms Submitted to GEICO**

94.     To support the fraudulent psychological charges, statutorily prescribed claim forms for No-Fault Benefits (i.e., NF-3 forms) consistently have been submitted to GEICO by and on behalf of the Defendants since 2003 seeking payment for services for which the PC Defendants are ineligible to receive payment.

95.     The NF-3 forms submitted to GEICO by and on behalf of the PC Defendants are false and misleading in the following material respects:

(i)      The NF-3 forms uniformly misrepresent to GEICO that the PC Defendants are lawfully licensed, and therefore, eligible to receive No-Fault Benefits pursuant to Insurance Law § 5102(a)(1) and 11 N.Y.C.R.R. § 65-3.16(a)(12). In fact, the PC Defendants are not properly licensed in that they are psychology professional corporations that unlawfully pay kickbacks to the Clinics for their patient referrals.

(ii)     The NF-3 forms uniformly misrepresent to GEICO that the pertinent psychological services actually are performed, and that the pertinent psychological services are medically or psychologically necessary. In fact, the psychological services frequently are not performed at all and, to the extent that they are performed, they are not medically or psychologically necessary and are performed pursuant to kickbacks that the Defendants provide to the Clinics and

pursuant to a pre-determined fraudulent treatment and billing protocol designed solely to financially enrich the Defendants.

**V.    The Defendants' Fraudulent Concealment and GEICO's Justifiable Reliance**

96.    The Defendants legally and ethically are obligated to act honestly and with integrity in connection with the performance of the Fraudulent Services and their submission of charges to GEICO.

97.    To induce GEICO to promptly pay the charges for the Fraudulent Services, the Defendants have gone to great lengths to systematically conceal their fraud. For instance, they knowingly have misrepresented and concealed facts in order to prevent GEICO from discovering that the Fraudulent Services were medically unnecessary and performed pursuant to a fraudulent pre-determined protocol designed to maximize the charges that could be submitted.

98.    Likewise, the Defendants knowingly have misrepresented and concealed facts in order to prevent GEICO from discovering that the psychology services frequently never are performed in the first instance.

99.    In addition, in every bill that the Defendants submit or caused to be submitted, the Defendants uniformly misrepresent that the PC Defendants are lawfully licensed and eligible to bill for and collect No-Fault Benefits, when in fact they are not.

100.    Moreover, the Defendants knowingly have misrepresented and concealed facts in order to prevent GEICO from discovering that PC Defendants derive their patient referrals through kickbacks that the Defendants provide to the Clinics. Indeed, the Defendants entered into complex financial arrangements with the Clinics that were designed to, and did, conceal the nature of the kickbacks.

101.    Furthermore, the Defendants have created multiple professional corporations with different tax identification numbers in order to reduce the amount of billing submitted through

any single professional corporation, thereby preventing GEICO from identifying the pattern of fraudulent charges submitted through any one entity.

102.    The Defendants have hired law firms to pursue collection of the fraudulent charges from GEICO and other insurers. These law firms routinely file expensive and time-consuming litigation against GEICO and other insurers if the charges are not promptly paid in full.

103.    GEICO is under statutory and contractual obligations to promptly and fairly process claims within 30 days. The facially-valid documents submitted to GEICO in support of the fraudulent charges at issue, combined with the material misrepresentations and omissions described above, were designed to and did cause GEICO to rely upon them. As a result, GEICO has incurred damages of more than $391,681.00 based upon the fraudulent charges.

104.    GEICO maintains standard office practices and procedures that are designed to and do ensure that no-fault claims denial forms or requests for additional verification of no-fault claims are properly addressed and mailed in a timely manner in accordance with the No-Fault Laws.

105.    In accordance with the No-Fault Laws, and GEICO's standard office practices and procedures, GEICO either: (i) timely denied the pending claims for No-Fault Benefits submitted through the PC Defendants; (ii) timely issued requests for additional verification with respect to all of the pending claims for No-Fault Benefits submitted through the PC Defendants, yet failed to obtain compliance with the request for additional verification; or else (iii) the time in which to deny the pending claims for No-Fault Benefits submitted through the PC Defendants, or else to request additional verification of those claims, has not expired

106.   Based upon the Defendants' material misrepresentations and other affirmative acts to conceal their fraud from GEICO, GEICO did not discover, and could not reasonably have discovered that its damages were attributable to fraud until shortly before it filed this complaint.

### FIRST CAUSE OF ACTION
#### Against All Defendants
#### (Declaratory Judgment – 28 U.S.C. §§ 2201 and 2202)

107.   GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 106 above.

108.   There is an actual case in controversy between GEICO and the PC Defendants regarding more than $356,706.00 in fraudulent billing for psychology services that has been submitted to GEICO.

109.   The PC Defendants have no right to receive payment for any pending bills submitted to GEICO because the Fraudulent Services that were billed through the PC Defendants were not medically or psychologically necessary, and were performed – to the extent that they were performed at all – pursuant to pre-determined fraudulent protocols designed solely to financially enrich the Defendants.

110.   The PC Defendants have no right to receive payment for any pending bills submitted to GEICO because the psychological services that are billed through the PC Defendants in many cases are not provided in the first instance.

111.   Accordingly, GEICO requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that:

(i)    The PC Defendants have no right to receive payment for any pending bills submitted to GEICO because the psychological services that are billed through the PC Defendants are not medically or psychologically necessary, and are performed – to the extent that they are performed at all – pursuant to pre-determined fraudulent protocols designed solely to financially enrich the Defendants;

(ii)     The PC Defendants have no right to receive payment for any pending bills submitted to GEICO because, in many cases, the psychological services that are billed through the PC Defendants are not provided in the first instance; and

(iii)    The PC Defendants have no right to receive payment for any pending bills submitted to GEICO because the psychological services that are billed through the PC Defendants are performed – to the extent that they are performed at all – pursuant to illegal kickback arrangements between the Defendants and the referring Clinics.

**SECOND CAUSE OF ACTION**
**Against Margulis**
**(Violation of RICO, 18 U.S.C. § 1962(c))**

112.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 111 above.

113.    Comprehensive Psychological Evaluation, P.C. is an ongoing "enterprise," as that term is defined in 18 U.S.C. § 1961(4), that engages in activities which affects interstate commerce.

114.    Margulis knowingly has conducted and/or participated, directly or indirectly, in the conduct of Comprehensive's affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted thousands of fraudulent bills for more than eight years seeking payments that Comprehensive was not eligible to receive under the No-Fault Laws because the billed-for services were not medically necessary, were performed and billed pursuant to a pre-determined, fraudulent treatment and billing protocol designed solely to enrich the Defendants, were performed pursuant to kickbacks provided to the Clinics, and in many cases were not performed at all.  A representative sample of the fraudulent bills and corresponding mailings submitted to GEICO that comprise, in part, the pattern of racketeering

activity identified through the date of this Complaint are described, in part, in the chart annexed hereto as Exhibit "1".

115.    Comprehensive's business is racketeering activity, inasmuch as the enterprise exists for the purpose of submitting fraudulent charges to insurers.  The predicate acts of mail fraud are the regular way in which Margulis operates Comprehensive, insofar as Comprehensive is not engaged in a legitimate psychological practice, and acts of mail fraud therefore are essential in order for Comprehensive to function.  Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud implies a threat of continued criminal activity, as does the fact that the Defendants continue to attempt collection on the fraudulent billing submitted through Comprehensive to the present day.

116.    Comprehensive is engaged in inherently unlawful acts, inasmuch as it continues to submit and attempt collection on fraudulent billing submitted to GEICO and other insurers. These inherently unlawful acts are taken by Comprehensive in pursuit of inherently unlawful goals – namely, the theft of money from GEICO and other insurers through fraudulent No-Fault billing.

117.    GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid at least $274,848.00 pursuant to the fraudulent bills submitted by the Defendants through Comprehensive since 2003.

118.    By reason of its injury, GEICO is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. §1964(c), and any other relief the Court deems just and proper.

## THIRD CAUSE OF ACTION
### Against the Margulis, Owens and Kostynyuk
### (Violation of RICO, 18 U.S.C. § 1962(d))

119.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 118 above.

120.    Comprehensive Psychological Evaluation, P.C. is an ongoing "enterprise," as that term is defined in 18 U.S.C. § 1961(4), that engages in activities which affects interstate commerce.

121.    Margulis, Owens, and Kostynyuk  are employed by and/or associated with the Comprehensive enterprise.

122.    Margulis, Owens, and Kostynyuk knowingly have agreed, combined and conspired to conduct and/or participate, directly or indirectly, in the conduct of the Comprehensive enterprise's affairs, through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted thousands of fraudulent bills, for more than eight years, seeking payment for psychology services that Comprehensive was not eligible to receive under the No-Fault Laws because the billed-for services were not medically necessary, were performed and billed pursuant to a pre-determined, fraudulent treatment and billing protocol designed solely to enrich the Defendants, were performed pursuant to kickbacks provided to the Clinics, and in many cases were not performed at all.  A representative sample of the fraudulent bills and corresponding mailings submitted to GEICO that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the chart annexed hereto as Exhibit "1".  Each such mailing was made in furtherance of the mail fraud scheme.

123.    Margulis, Owens, and Kostynyuk knew of, agreed to and acted in furtherance of the common and overall objective (i.e., to defraud GEICO and other insurers of money) by submitting or facilitating the submission of the fraudulent charges to GEICO.

124.    GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid at least $274,848.00 pursuant to the fraudulent bills submitted by the Defendants through Comprehensive since 2003.

125.    By reason of its injury, GEICO is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. §1964(c), and any other relief the Court deems just and proper.

**FOURTH CAUSE OF ACTION**
**Against Comprehensive and Margulis**
**(Common Law Fraud)**

126.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 125 above.

127.    Comprehensive and Margulis intentionally and knowingly made false and fraudulent statements of material fact to GEICO and concealed material facts from GEICO in the course of their submission of thousands of fraudulent bills through Comprehensive seeking payment for psychological services.

128.    The false and fraudulent statements of material fact and acts of fraudulent concealment include:

(i)    In every claim, the representation that Comprehensive is lawfully licensed, and therefore, eligible to receive No-Fault Benefits pursuant to Insurance Law § 5102(a)(1) and 11 N.Y.C.R.R. § 65-3.16(a)(12), when in fact Comprehensive is not properly licensed in that it is a psychology professional corporation that unlawfully pays kickbacks to the Clinics for its patient referrals.

(ii)   In every claim, the representation that the pertinent psychological services actually are performed through Comprehensive, and that the pertinent

psychological services are medically or psychologically necessary, when in fact the psychological services frequently are not performed at all and, to the extent that they are performed, they are not medically or psychologically necessary and are performed pursuant to kickbacks that the Defendants provide to the Clinics and pursuant to a pre-determined fraudulent protocol designed solely to financially enrich the Defendants.

129.    The Defendants intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to induce GEICO to pay charges submitted through Comprehensive that were not compensable under the No-Fault Laws.

130.    GEICO justifiably relied on the Defendants' false and fraudulent representations, and as a proximate result has been injured in its business and property by reason of the above-described conduct in that it has paid at least $274,848.00 pursuant to the fraudulent bills submitted by the Defendants through Comprehensive.

131.    The Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles GEICO to recover punitive damages.

132.    Accordingly, by virtue of the foregoing, GEICO is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

### FIFTH CAUSE OF ACTION
**Against Owens and Kostynyuk**
**(Aiding and Abetting Fraud)**

133.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 132 above.

134.    Owens and Kostynyuk  knowingly aided and abetted the fraudulent scheme that was perpetrated on GEICO by Comprehensive and Margulis.  The acts of Owens and Kostynyuk in furtherance of the fraudulent scheme include: (i) knowingly performing medically and psychologically unnecessary psychological services in exchange for payment of money from

Comprehensive and Margulis; (ii) knowingly issuing fraudulent reports in exchange for payment of money from Comprehensive and Margulis; and (iii) knowingly causing fraudulent billing to be issued in exchange for payment of money from Comprehensive and Margulis.

135.    The conduct of Owens and Kostynyuk  in furtherance of the fraudulent scheme is significant and material. The conduct of Owens and Kostynyuk is a necessary part of and is critical to the success of the fraudulent scheme because without their actions, including the performance of the fraudulent psychological services, issuance of the fraudulent reports, and participation in the fraudulent billing, there would be no opportunity for Comprehensive and Margulis to obtain payment from GEICO and from other insurers.

136.    Owens and Kostynyuk aided and abetted the fraudulent scheme in a calculated effort to induce GEICO into paying charges to Comprehensive for medically unnecessary services or illusory services that were not compensable under New York's No-Fault Laws, because they sought to continue profiting through the fraudulent scheme.

137.    The conduct of Owens and Margulis caused GEICO to pay more than $274,848.00 based upon the fraudulent charges submitted through Comprehensive.

138.    Owen's and Kostynyuk's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles GEICO to recover punitive damages.

139.    Accordingly, by virtue of the foregoing, GEICO is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

## SIXTH CAUSE OF ACTION
### Against Comprehensive, Margulis, Owens, and Kostynyuk
### (Unjust Enrichment)

140.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 139 above.

141.    As set forth above, Comprehensive, Margulis, Owens, and Kostynyuk have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of GEICO.

142.    When GEICO paid the bills and charges submitted by or on behalf of Comprehensive for No-Fault Benefits, it reasonably believed that it was legally obligated to make such payments based on the Defendants' improper, unlawful, and/or unjust acts.

143.    Comprehensive, Margulis, Owens, and Kostynyuk  have been enriched at GEICO's expense by GEICO's payments which constituted a benefit that Defendants voluntarily accepted notwithstanding their improper, unlawful, and unjust billing scheme.

144.    Defendants' retention of GEICO's payments violates fundamental principles of justice, equity and good conscience.

145.    By reason of the above, the Defendants have been unjustly enriched in an amount to be determined at trial, but in no event less than $274,848.00.

## SEVENTH CAUSE OF ACTION
### Against Margulis
### (Violation of RICO, 18 U.S.C. § 1962(c))

146.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 145 above.

147.    American Psychological Care, P.C. is an ongoing "enterprise," as that term is defined in 18 U.S.C. § 1961(4), that engages in activities which affects interstate commerce.

148.   Margulis knowingly has conducted and/or participated, directly or indirectly, in the conduct of American's affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted hundreds of fraudulent bills on a continuous basis for more than six months seeking payments that American was not eligible to receive under the No-Fault Laws because the billed-for services were not medically necessary, were performed and billed pursuant to a pre-determined, fraudulent treatment and billing protocol designed solely to enrich the Defendants, were performed pursuant to kickbacks provided to the Clinics, and in many cases were not performed at all.  A representative sample of the fraudulent bills and corresponding mailings submitted to GEICO that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the chart annexed hereto as Exhibit " 2".

149.   American's business is racketeering activity, inasmuch as the enterprise exists for the purpose of submitting fraudulent charges to insurers.  The predicate acts of mail fraud are the regular way in which Margulis operates American, insofar as American is not engaged in a legitimate psychological practice, and acts of mail fraud therefore are essential in order for American to function.  Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud implies a threat of continued criminal activity, as does the fact that the Defendants continue to attempt collection on the fraudulent billing submitted through American to the present day.

150.   American is engaged in inherently unlawful acts, inasmuch as it continues to attempt collection on fraudulent billing submitted to GEICO and other insurers. These inherently

unlawful acts are taken by American in pursuit of inherently unlawful goals – namely, the theft of money from GEICO and other insurers through fraudulent No-Fault billing.

151.    GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid at least $26,772.00 pursuant to the fraudulent bills submitted by the Defendants through American.

152.    By reason of its injury, GEICO is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. §1964(c), and any other relief the Court deems just and proper.

**EIGHTH CAUSE OF ACTION**
**Against Margulis, Owens, and Kostynyuk**
**(Violation of RICO, 18 U.S.C. § 1962(d))**

153.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 152 above.

154.    American Psychological Care, P.C. is an ongoing "enterprise," as that term is defined in 18 U.S.C. § 1961(4), that engages in activities which affects interstate commerce.

155.    Margulis, Owens, and Kostynyuk  are employed by and/or associated with the American enterprise.

156.    Margulis, Owens, and Kostynyuk  knowingly have agreed, combined and conspired to conduct and/or participate, directly or indirectly, in the conduct of the American enterprise's affairs, through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted hundreds of fraudulent bills, on a continuous basis for more than six months, seeking payment for psychology services that American was not eligible to receive under the No-Fault Laws because the billed-for services were not medically necessary, were

performed and billed pursuant to a pre-determined, fraudulent treatment and billing protocol designed solely to enrich the Defendants, were performed pursuant to kickbacks provided to the Clinics, and in many cases were not performed at all. A representative sample of the fraudulent bills and corresponding mailings submitted to GEICO that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the chart annexed hereto as Exhibit "2". Each such mailing was made in furtherance of the mail fraud scheme.

157.    Margulis, Owens, and Kostynyuk knew of, agreed to and acted in furtherance of the common and overall objective (i.e., to defraud GEICO and other insurers of money) by submitting or facilitating the submission of the fraudulent charges to GEICO.

158.    GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid at least $26,772.00 pursuant to the fraudulent bills submitted by the Defendants through American.

159.    By reason of its injury, GEICO is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. §1964(c), and any other relief the Court deems just and proper.

### NINTH CAUSE OF ACTION
**American and Margulis**
**(Common Law Fraud)**

160.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 159 above.

161.    American and Margulis intentionally and knowingly made false and fraudulent statements of material fact to GEICO and concealed material facts from GEICO in the course of

their submission of hundreds of fraudulent bills through American seeking payment for psychological services.

162. The false and fraudulent statements of material fact and acts of fraudulent concealment include:

(i)   In every claim, the representation that American is lawfully licensed, and therefore, eligible to receive No-Fault Benefits pursuant to Insurance Law § 5102(a)(1) and 11 N.Y.C.R.R. § 65-3.16(a)(12), when in fact American is not properly licensed in that it is a psychology professional corporation that unlawfully pays kickbacks to the Clinics for its patient referrals.

(ii)  In every claim, the representation that the pertinent psychological services actually are performed through American, and that the pertinent psychological services are medically or psychologically necessary, when in fact the psychological services frequently are not performed at all and, to the extent that they are performed, they are not medically or psychologically necessary and are performed pursuant to kickbacks that the Defendants provide to the Clinics and pursuant to a pre-determined fraudulent protocol designed solely to financially enrich the Defendants.

163. The Defendants intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to induce GEICO to pay charges submitted through American that were not compensable under the No-Fault Laws.

164. GEICO justifiably relied on the Defendants' false and fraudulent representations, and as a proximate result has been injured in its business and property by reason of the above-described conduct in that it has paid at least $26,772.00 pursuant to the fraudulent bills submitted by the Defendants through American.

165. The Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles GEICO to recover punitive damages.

166. Accordingly, by virtue of the foregoing, GEICO is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

**TENTH CAUSE OF ACTION**
**Against Owens and Kostynyuk**
**(Aiding and Abetting Fraud)**

167.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 166 above.

168.    Owens and Kostynyuk knowingly aided and abetted the fraudulent scheme that was perpetrated on GEICO by American and Margulis.  The acts of Owens and Kostynyuk  in furtherance of the fraudulent scheme include: (i) knowingly performing medically unnecessary psychological services in exchange for payment of money from American and Margulis; (ii) knowingly issuing fraudulent reports in exchange for payment of money from American and Margulis; and (iii) knowingly causing fraudulent billing to be issued in exchange for payment of money from American and Margulis.

169.    The conduct of Owens and Kostynyuk  in furtherance of the fraudulent scheme is significant and material. The conduct of Owens and Kostynyuk is a necessary part of and is critical to the success of the fraudulent scheme because without their actions, including the performance of the fraudulent psychological services, issuance of the fraudulent reports, and participation in the fraudulent billing, there would be no opportunity for American and Margulis to obtain payment from GEICO and from other insurers.

170.    Owens and Kostynyuk aided and abetted the fraudulent scheme in a calculated effort to induce GEICO into paying charges to American for medically unnecessary services or illusory services that were not compensable under New York's No-Fault Laws, because they sought to continue profiting through the fraudulent scheme.

171.    The conduct of Owens and Kostynyuk caused GEICO to pay more than $26,772.00 based upon the fraudulent charges submitted through American.

172.   Owen's and Kostynyuk's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles GEICO to recover punitive damages.

173.   Accordingly, by virtue of the foregoing, GEICO is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

## ELEVENTH CAUSE OF ACTION
### Against American, Margulis, Owens, and Kostynyuk
### (Unjust Enrichment)

174.   GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 173 above.

175.   As set forth above, American, Margulis, Owens, and Kostynyuk  have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of GEICO.

176.   When GEICO paid the bills and charges submitted by or on behalf of American for No-Fault Benefits, it reasonably believed that it was legally obligated to make such payments based on the Defendants' improper, unlawful, and/or unjust acts.

177.   American, Margulis, Owens, and Kostynyuk have been enriched at GEICO's expense by GEICO's payments which constituted a benefit that Defendants voluntarily accepted notwithstanding their improper, unlawful, and unjust billing scheme.

178.   Defendants' retention of GEICO's payments violates fundamental principles of justice, equity and good conscience.

179.   By reason of the above, the Defendants have been unjustly enriched in an amount to be determined at trial, but in no event less than $26,772.00.

## TWELFTH CAUSE OF ACTION
### Against Margulis
### (Violation of RICO, 18 U.S.C. § 1962(c))

180.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 179 above.

181.    Psychology YME, P.C. a/k/a Psychological YME, P.C. is an ongoing "enterprise," as that term is defined in 18 U.S.C. § 1961(4), that engages in activities which affects interstate commerce.

182.    Margulis knowingly has conducted and/or participated, directly or indirectly, in the conduct of Psych YME's affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted hundreds of fraudulent bills on a continuous basis for more than two years seeking payments that Psych YME was not eligible to receive under the No-Fault Laws because the billed-for services were not medically necessary, were performed and billed pursuant to a pre-determined, fraudulent treatment and billing protocol designed solely to enrich the Defendants, were performed pursuant to kickbacks provided to the Clinics, and in many cases were not performed at all.  A representative sample of the fraudulent bills and corresponding mailings submitted to GEICO that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the chart annexed hereto as Exhibit "3".

183.    Psych YME's business is racketeering activity, inasmuch as the enterprise exists for the purpose of submitting fraudulent charges to insurers.  The predicate acts of mail fraud are the regular way in which Margulis operates Psych YME, insofar as Psych YME is not engaged in a legitimate psychological practice, and acts of mail fraud therefore are essential in order for

Psych YME to function.  Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud implies a threat of continued criminal activity, as does the fact that the Defendants continue to attempt collection on the fraudulent billing submitted through Psych YME to the present day.

184.    Psych YME is engaged in inherently unlawful acts, inasmuch as it continues to submit and attempt collection on fraudulent billing submitted to GEICO and other insurers. These inherently unlawful acts are taken by Psych YME in pursuit of inherently unlawful goals – namely, the theft of money from GEICO and other insurers through fraudulent No-Fault billing.

185.    GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid at least $45,288.00 pursuant to the fraudulent bills submitted by the Defendants through Psych YME.

186.    By reason of its injury, GEICO is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. §1964(c), and any other relief the Court deems just and proper.

### THIRTEENTH CAUSE OF ACTION
**Against Margulis, Owens, and Kostynyuk**
**(Violation of RICO, 18 U.S.C. § 1962(d))**

187.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 186 above.

188.    Psychology YME, P.C. a/k/a Psychological YME, P.C. is an ongoing "enterprise," as that term is defined in 18 U.S.C. § 1961(4), that engages in activities which affects interstate commerce.

189.    Margulis, Owens, and Kostynyuk  are employed by and/or associated with the Psych YME enterprise.

190.    Margulis, Owens, and Kostynyuk   knowingly have agreed, combined and conspired to conduct and/or participate, directly or indirectly, in the conduct of the Psych YME enterprise's affairs, through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted hundreds of fraudulent bills, on a continuous basis for more than two years, seeking payment for psychology services that Psych YME was not eligible to receive under the No-Fault Laws because the billed-for services were not medically necessary, were performed and billed pursuant to a pre-determined, fraudulent treatment and billing protocol designed solely to enrich the Defendants, were performed pursuant to kickbacks provided to the Clinics, and in many cases were not performed at all.  A representative sample of the fraudulent bills and corresponding mailings submitted to GEICO that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the chart annexed hereto as Exhibit "3".  Each such mailing was made in furtherance of the mail fraud scheme.

191.    Margulis, Owens, and Kostynyuk  knew of, agreed to and acted in furtherance of the common and overall objective (i.e., to defraud GEICO and other insurers of money) by submitting or facilitating the submission of the fraudulent charges to GEICO.

192.    GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid at least $45,288.00 pursuant to the fraudulent bills submitted by the Defendants through Psych YME.

193.    By reason of its injury, GEICO is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. §1964(c), and any other relief the Court deems just and proper.

**FOURTEENTH CAUSE OF ACTION**
**Against Psych YME and Margulis**
**(Common Law Fraud)**

194.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 193 above.

195.    Psych YME and Margulis intentionally and knowingly made false and fraudulent statements of material fact to GEICO and concealed material facts from GEICO in the course of their submission of thousands of fraudulent bills through Psych YME seeking payment for psychological services.

196.    The false and fraudulent statements of material fact and acts of fraudulent concealment include:

(i)     In every claim, the representation that Psych YME is lawfully licensed, and therefore, eligible to receive No-Fault Benefits pursuant to Insurance Law § 5102(a)(1) and 11 N.Y.C.R.R. § 65-3.16(a)(12), when in fact Psych YME is not properly licensed in that it is a psychology professional corporation that unlawfully pays kickbacks to the Clinics for its patient referrals.

(ii)    In every claim, the representation that the pertinent psychological services actually are performed through Psych YME, and that the pertinent psychological services are medically or psychologically necessary, when in fact the psychological services frequently are not performed at all and, to the extent that they are performed, they are not medically or psychologically necessary and are performed pursuant to kickbacks that the Defendants provide to the Clinics and pursuant to a pre-determined fraudulent protocol designed solely to financially enrich the Defendants.

197.    The Defendants intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to induce GEICO to pay charges submitted through Psych YME that were not compensable under the No-Fault Laws.

198.    GEICO justifiably relied on the Defendants' false and fraudulent representations, and as a proximate result has been injured in its business and property by reason of the above-described conduct in that it has paid at least $45,288.00 pursuant to the fraudulent bills submitted by the Defendants through Psych YME.

199.    The Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles GEICO to recover punitive damages.

200.    Accordingly, by virtue of the foregoing, GEICO is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

### FIFTEENTH CAUSE OF ACTION
**Against Owens and Kostynyuk**
**(Aiding and Abetting Fraud)**

201.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 200 above.

202.    Owens and Kostynyuk  knowingly aided and abetted the fraudulent scheme that was perpetrated on GEICO by Psych YME and Margulis.  The acts of Owens and Kostynyuk  in furtherance of the fraudulent scheme include: (i) knowingly performing medically unnecessary psychological services in exchange for payment of money from Psych YME and Margulis; (ii) knowingly issuing fraudulent reports in exchange for payment of money from Psych YME and Margulis; and (iii) knowingly causing fraudulent billing to be issued in exchange for payment of money from Psych YME and Margulis.

203.    The conduct of Owens and Kostynyuk  in furtherance of the fraudulent scheme is significant and material.  The conduct of Owens and Kostynyuk  is a necessary part of and is critical  to  the  success  of  the  fraudulent  scheme  because  without  their  actions,  including  the

performance of the fraudulent psychological services, issuance of the fraudulent reports, and participation in the fraudulent billing, there would be no opportunity for Psych YME and Margulis to obtain payment from GEICO and from other insurers.

204.    Owens and Kostynyuk  aided and abetted the fraudulent scheme in a calculated effort to induce GEICO into paying charges to Psych YME for medically unnecessary services or illusory services that were not compensable under New York's No-Fault Laws, because they sought to continue profiting through the fraudulent scheme.

205.    The conduct of Owens and Kostynyuk caused GEICO to pay more than $45,288.00 based upon the fraudulent charges submitted through Psych YME.

206.    Owen's and Kostynyuk's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles GEICO to recover punitive damages.

207.    Accordingly, by virtue of the foregoing, GEICO is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

## SIXTEENTH CAUSE OF ACTION
### Against Psych YME, Margulis, Owens, and Kostynyuk
### (Unjust Enrichment)

208.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 207 above.

209.    As set forth above, Psych YME, Margulis, Owens, and Kostynyuk  have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of GEICO.

210.    When GEICO paid the bills and charges submitted by or on behalf of Psych YME

for No-Fault Benefits, it reasonably believed that it was legally obligated to make such payments

based on the Defendants' improper, unlawful, and/or unjust acts.

211.    Psych YME, Margulis, Owens, and Kostynyuk  have been enriched at GEICO's

expense by GEICO's payments which constituted a benefit that Defendants voluntarily accepted

notwithstanding their improper, unlawful, and unjust billing scheme.

212.    Defendants' retention of GEICO's payments violates fundamental principles of

justice, equity and good conscience.

213.    By reason of the above, the Defendants have been unjustly enriched in an amount

to be determined at trial, but in no event less than $45,288.00.

**SEVENTEENTH CAUSE OF ACTION**
**Against Richards**
**(Violation of RICO, 18 U.S.C. § 1962(c))**

214.    GEICO incorporates, as though fully set forth herein, each and every allegation in

paragraphs 1 through 213 above.

215.    Rehab Psychological Services, P.C. is an ongoing "enterprise," as that term is

defined in 18 U.S.C. § 1961(4), that engages in activities which affects interstate commerce.

216.    Richards knowingly has conducted and/or participated, directly or indirectly, in

the conduct of Rehab's affairs through a pattern of racketeering activity consisting of repeated

violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United

States mails to submit or cause to be submitted hundreds of fraudulent bills on a continuous basis

for more than four months seeking payments that Rehab was not eligible to receive under the

No-Fault Laws because the billed-for services were not medically necessary, were performed

and billed pursuant to a pre-determined, fraudulent treatment and billing protocol designed solely

to enrich the Defendants, were performed pursuant to kickbacks provided to the Clinics, and in many cases were not performed at all.  A representative sample of the fraudulent bills and corresponding mailings submitted to GEICO that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the chart annexed hereto as Exhibit "4".

217.    Rehab's business is racketeering activity, inasmuch as the enterprise exists for the purpose of submitting fraudulent charges to insurers.  The predicate acts of mail fraud are the regular way in which Richards operates Rehab, insofar as Rehab is not engaged in a legitimate psychological practice, and acts of mail fraud therefore are essential in order for Rehab to function.  Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud implies a threat of continued criminal activity, as does the fact that the Defendants continue to submit the fraudulent billing through Rehab to the present day.

218.    Rehab is engaged in inherently unlawful acts, inasmuch as it continues to submit on fraudulent billing submitted to GEICO and other insurers. These inherently unlawful acts are taken by Rehab in pursuit of inherently unlawful goals – namely, the theft of money from GEICO and other insurers through fraudulent No-Fault billing.

219.    GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid at least $21,532.00 pursuant to the fraudulent bills submitted by the Defendants through Rehab.

220.    By reason of its injury, GEICO is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. §1964(c), and any other relief the Court deems just and proper.

## EIGHTEENTH CAUSE OF ACTION
### Against Richards, Margulis, Owens, and Kostynyuk
### (Violation of RICO, 18 U.S.C. § 1962(d))

221.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 220 above.

222.    Rehab Psychological Services, P.C. is an ongoing "enterprise," as that term is defined in 18 U.S.C. § 1961(4), that engages in activities which affects interstate commerce.

223.    Rehab, Richards, Margulis, Owens, and Kostynyuk are employed by and/or associated with the Rehab enterprise.

224.    Richards, Margulis, Owens, and Kostynyuk  knowingly have agreed, combined and conspired to conduct and/or participate, directly or indirectly, in the conduct of the Rehab enterprise's affairs, through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted hundreds of fraudulent bills, on a continuous basis for more than four months, seeking payment for psychology services that Rehab was not eligible to receive under the No-Fault Laws because the billed-for services were not medically necessary, were performed and billed pursuant to a pre-determined, fraudulent treatment and billing protocol designed solely to enrich the Defendants, were performed pursuant to kickbacks provided to the Clinics, and in many cases were not performed at all.  A representative sample of the fraudulent bills and corresponding mailings submitted to GEICO that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the chart annexed hereto as Exhibit "4".  Each such mailing was made in furtherance of the mail fraud scheme.

225.    Richards, Margulis, Owens, and Kostynyuk knew of, agreed to and acted in furtherance of the common and overall objective (i.e., to defraud GEICO and other insurers of money) by submitting or facilitating the submission of the fraudulent charges to GEICO.

226.    GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid at least $21,532.00 pursuant to the fraudulent bills submitted by the Defendants through Rehab.

227.    By reason of its injury, GEICO is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. §1964(c), and any other relief the Court deems just and proper.

**NINETEENTH CAUSE OF ACTION**
**Against Rehab and Richards**
**(Common Law Fraud)**

228.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 227 above.

229.    Rehab and Richards intentionally and knowingly made false and fraudulent statements of material fact to GEICO and concealed material facts from GEICO in the course of their submission of hundreds of fraudulent bills through Rehab seeking payment for psychological services.

230.    The false and fraudulent statements of material fact and acts of fraudulent concealment include:

(i)     In every claim, the representation that Rehab is lawfully licensed, and therefore, eligible to receive No-Fault Benefits pursuant to Insurance Law § 5102(a)(1) and 11 N.Y.C.R.R. § 65-3.16(a)(12), when in fact Rehab is not properly licensed in that it is a psychology professional corporation that unlawfully pays kickbacks to the Clinics for its patient referrals.

(ii)    In every claim, the representation that the pertinent psychological services actually are performed through Rehab, and that the pertinent psychological

services are medically or psychologically necessary, when in fact the psychological services frequently are not performed at all and, to the extent that they are performed, they are not medically or psychologically necessary and are performed pursuant to kickbacks that the Defendants provide to the Clinics and pursuant to a pre-determined fraudulent protocol designed solely to financially enrich the Defendants.

231.    The Defendants intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to induce GEICO to pay charges submitted through Rehab that were not compensable under the No-Fault Laws.

232.    GEICO justifiably relied on the Defendants' false and fraudulent representations, and as a proximate result has been injured in its business and property by reason of the above-described conduct in that it has paid at least $21,532.00 pursuant to the fraudulent bills submitted by the Defendants through Rehab.

233.    The Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles GEICO to recover punitive damages.

234.    Accordingly, by virtue of the foregoing, GEICO is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

## TWENTIETH CAUSE OF ACTION
### Against Margulis, Owens and Kostynyuk
### (Aiding and Abetting Fraud)

235.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 234 above.

236.    Margulis, Owens and Kostynyuk  knowingly aided and abetted the fraudulent scheme that was perpetrated on GEICO by Rehab and Richards.  The acts of Margulis, Owens and Kostynyuk in furtherance of the fraudulent scheme include: (i) knowingly performing medically unnecessary psychological services in exchange for payment of money from Rehab

and Richards; (ii) knowingly issuing fraudulent reports in exchange for payment of money from Rehab and Richards; and (iii) knowingly causing fraudulent billing to be issued in exchange for payment of money from Rehab and Richards.

237.   The conduct of Margulis, Owens and Kostynyuk  in furtherance of the fraudulent scheme is significant and material.  The conduct of Margulis, Owens and Kostynyuk is a necessary part of and is critical to the success of the fraudulent scheme because without their actions, including the performance of the fraudulent psychological services, issuance of the fraudulent reports, and participation in the fraudulent billing, there would be no opportunity for Rehab and Richards to obtain payment from GEICO and from other insurers.

238.   Margulis, Owens and Kostynyuk  aided and abetted the fraudulent scheme in a calculated effort to induce GEICO into paying charges to Rehab for medically unnecessary services or illusory services that were not compensable under New York's No-Fault Laws, because they sought to continue profiting through the fraudulent scheme.

239.   The conduct of Margulis, Owens and Kostynyuk caused GEICO to pay more than $21,532.00 based upon the fraudulent charges submitted through Rehab.

240.   Margulis', Owen's and Kostynyuk 's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles GEICO to recover punitive damages.

241.   Accordingly, by virtue of the foregoing, GEICO is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

## TWENTY-FIRST CAUSE OF ACTION
### Against Rehab, Richards, Margulis, Owens, and Kostynyuk
### (Unjust Enrichment)

242.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 241 above.

243.    As set forth above, Rehab, Richards, Margulis, Owens, and Kostynyuk  have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of GEICO.

244.    When GEICO paid the bills and charges submitted by or on behalf of Rehab for No-Fault Benefits, it reasonably believed that it was legally obligated to make such payments based on the Defendants' improper, unlawful, and/or unjust acts.

245.    Rehab, Richards, Margulis, Owens, and Kostynyuk have been enriched at GEICO's expense by GEICO's payments which constituted a benefit that Defendants voluntarily accepted notwithstanding their improper, unlawful, and unjust billing scheme.

246.    Defendants' retention of GEICO's payments violates fundamental principles of justice, equity and good conscience.

247.    By reason of the above, the Defendants have been unjustly enriched in an amount to be determined at trial, but in no event less than $21,532.00.

## TWENTY-SECOND CAUSE OF ACTION
### Against Psych Evaluation and Richards
### (Common Law Fraud)

248.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 247  above.

249.    Psych Evaluation and Richards intentionally and knowingly made false and fraudulent statements of material fact to GEICO and concealed material facts from GEICO in the

course of their submission of hundreds of fraudulent bills through Psych Evaluation seeking payment for psychological services.  See Exhibit "5."

250.   The false and fraudulent statements of material fact and acts of fraudulent concealment include:

(i)   In every claim, the representation that Psych Evaluation is lawfully licensed, and therefore, eligible to receive No-Fault Benefits pursuant to Insurance Law § 5102(a)(1) and 11 N.Y.C.R.R. § 65-3.16(a)(12), when in fact Psych Evaluation is not properly licensed in that it is a psychology professional corporation that unlawfully pays kickbacks to the Clinics for its patient referrals.

(ii)   In every claim, the representation that the pertinent psychological services actually are performed through Psych Evaluation, and that the pertinent psychological services are medically or psychologically necessary, when in fact the psychological services frequently are not performed at all and, to the extent that they are performed, they are not medically or psychologically necessary and are performed pursuant to kickbacks that the Defendants provide to the Clinics and pursuant to a pre-determined fraudulent protocol designed solely to financially enrich the Defendants.

251.   The Defendants intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to induce GEICO to pay charges submitted through Psych Evaluation that were not compensable under the No-Fault Laws.

252.   GEICO justifiably relied on the Defendants' false and fraudulent representations, and as a proximate result has been injured in its business and property by reason of the above-described conduct in that it has paid at least $23,241.00 pursuant to the fraudulent bills submitted by the Defendants through Psych Evaluation.

253.   The Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles GEICO to recover punitive damages.

254.   Accordingly, by virtue of the foregoing, GEICO is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

## TWENTY-THIRD CAUSE OF ACTION
### Against Margulis, Owens and Kostynyuk
### (Aiding and Abetting Fraud)

255. GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 254 above.

256. Margulis, Owens and Kostynyuk knowingly aided and abetted the fraudulent scheme that was perpetrated on GEICO by Psych Evaluation and Richards. The acts of Margulis, Owens and Kostynyuk in furtherance of the fraudulent scheme include: (i) knowingly performing medically unnecessary psychological services in exchange for payment of money from Psych Evaluation and Richards; (ii) knowingly issuing fraudulent reports in exchange for payment of money from Psych Evaluation and Richards; and (iii) knowingly causing fraudulent billing to be issued in exchange for payment of money from Psych Evaluation and Richards.

257. The conduct of Margulis, Owens and Kostynyuk in furtherance of the fraudulent scheme is significant and material. The conduct of Margulis, Owens and Kostynyuk is a necessary part of and is critical to the success of the fraudulent scheme because without their actions, including the performance of the fraudulent psychological services, issuance of the fraudulent reports, and participation in the fraudulent billing, there would be no opportunity for Psych Evaluation and Richards to obtain payment from GEICO and from other insurers.

258. Margulis, Owens and Kostynyuk aided and abetted the fraudulent scheme in a calculated effort to induce GEICO into paying charges to Psych Evaluation for medically unnecessary services or illusory services that were not compensable under New York's No-Fault Laws, because they sought to continue profiting through the fraudulent scheme.

259. The conduct of Margulis, Owens and Kostynyuk caused GEICO to pay more than $23,241.00 based upon the fraudulent charges submitted through Psych Evaluation.

260.    Margulis', Owen's and Kostynyuk 's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles GEICO to recover punitive damages.

261.    Accordingly, by virtue of the foregoing, GEICO is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

## TWENTY-FOURTH CAUSE OF ACTION
**Against Psych Evaluation, Richards, Margulis, Owens, and Kostynyuk**
**(Unjust Enrichment)**

262.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 261 above.

263.    As set forth above, Psych Evaluation, Richards, Margulis, Owens, and Kostynyuk have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of GEICO.

264.    When GEICO paid the bills and charges submitted by or on behalf of Psych Evaluation for No-Fault Benefits, it reasonably believed that it was legally obligated to make such payments based on the Defendants' improper, unlawful, and/or unjust acts.

265.    Psych Evaluation, Richards, Margulis, Owens, and Kostynyuk  have been enriched at GEICO's expense by GEICO's payments which constituted a benefit that Defendants voluntarily accepted notwithstanding their improper, unlawful, and unjust billing scheme.

266.    Defendants' retention of GEICO's payments violates fundamental principles of justice, equity and good conscience.

267.    By reason of the above, the Defendants have been unjustly enriched in an amount to be determined at trial, but in no event less than $23,241.00.

## JURY DEMAND

268.    Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury.

**WHEREFORE**, Plaintiffs Government Employees Insurance Co., GEICO Indemnity Company, GEICO General Insurance Company and GEICO Casualty Company demand that a Judgment be entered in their favor, as follows:

A.    On the First Cause of Action, a declaration pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, that the PC Defendants have no right to receive payment for any pending bills submitted to GEICO;

B.    On the Second Cause of Action against Margulis, compensatory damages in favor of GEICO in an amount to be determined at trial but in excess of $274,848.00, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

C.    On the Third Cause of Action against Margulis, Owens, and Kostynyuk, compensatory damages in favor of GEICO in an amount to be determined at trial but in excess of $274,848.00, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

D.    On the Fourth Cause of Action against Comprehensive and Margulis, compensatory damages in favor of GEICO in an amount to be determined at trial but in excess of $274,848.00, together with punitive damages, costs, and interest;

E.    On the Fifth Cause of Action against Owens and Kostynyuk, compensatory damages in favor of GEICO in an amount to be determined at trial but in excess of $274,848.00, together with punitive damages, costs, and interest;

F.      On the Sixth Cause of Action against Comprehensive, Margulis, Owens, and Kostynyuk, more than $274,848.00 in compensatory damages, plus costs and interest;

G.      On the Seventh Cause of Action against Margulis, compensatory damages in favor of GEICO in an amount to be determined at trial but in excess of $26,772.00, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

H.      On the Eighth Cause of Action against Margulis, Owens, and Kostynyuk, compensatory damages in favor of GEICO in an amount to be determined at trial but in excess of $26,772.00, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

I.      On the Ninth Cause of Action against American and Margulis, compensatory damages in favor of GEICO in an amount to be determined at trial but in excess of $26,772.00, together with punitive damages, costs, and interest;

J.      On the Tenth Cause of Action against Owens and Kostynyuk, compensatory damages in favor of GEICO in an amount to be determined at trial but in excess of $26,772.00, together with punitive damages, costs, and interest;

K.      On the Eleventh Cause of Action against American, Margulis, Owens, and Kostynyuk, more than $26,772.00 in compensatory damages, plus costs and interest;

L.      On the Twelfth Cause of Action against Margulis, compensatory damages in favor of GEICO in an amount to be determined at trial but in excess of $45,288.00,

together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

M.   On the Thirteenth Cause of Action against Margulis, Owens, and Kostynyuk, compensatory damages in favor of GEICO in an amount to be determined at trial but in excess of $45,288.00, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

N.   On the Fourteenth Cause of Action against Psych YME and Margulis, compensatory damages in favor of GEICO in an amount to be determined at trial but in excess of $45,288.00, together with punitive damages, costs, and interest;

O.   On the Fifteenth Cause of Action against Owens and Kostynyuk, compensatory damages in favor of GEICO in an amount to be determined at trial but in excess of $45,288.00, together with punitive damages, costs, and interest;

P.   On the Sixteenth Cause of Action against Psych YME, Margulis, Owens, and Kostynyuk, more than $45,288.00 in compensatory damages, plus costs and interest;

Q.   On the Seventeenth Cause of Action against Richards, compensatory damages in favor of GEICO in an amount to be determined at trial but in excess of $21,532.00, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

R.   On the Eighteenth Cause of Action against Richards, Margulis, Owens, and Kostynyuk, compensatory damages in favor of GEICO in an amount to be determined at trial but in excess of $21,532.00, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

S.      On the Nineteenth Cause of Action against Rehab and Richards, compensatory damages in favor of GEICO in an amount to be determined at trial but in excess of $21,532.00, together with punitive damages, costs, and interest;

T.      On the Twentieth Cause of Action against Margulis, Owens and Kostynyuk, compensatory damages in favor of GEICO in an amount to be determined at trial but in excess of $21,532.00, together with punitive damages, costs, and interest;

U.      On the Twenty-First Cause of Action against Rehab, Richards, Margulis, Owens, and Kostynyuk, more than $21,532.00, in compensatory damages, plus costs and interest;

V.      On the Twenty-Second Cause of Action against Psych Evaluation and Richards, compensatory damages in favor of GEICO in an amount to be determined at trial but in excess of $23,241.00, together with punitive damages, costs, and interest;

W.      On the Twenty-Third Cause of Action against Margulis, Owens and Kostynyuk, compensatory damages in favor of GEICO in an amount to be determined at trial but in excess of $23,241.00, together with punitive damages, costs, and interest;

X.      On the Twenty-Fourth Cause of Action against Psych Evaluation, Richards, Margulis, Owens, and Kostynyuk, more than $23,241.00, in compensatory damages, plus costs and interest;

Y.      awarding Plaintiff its costs including reasonable attorneys' fees, and any other relief the Court deems just and proper.

Dated: July 18, 2012

RIVKIN RADLER LLP

By:_____

Barry I. Levy (BL 2190)
Max Gershenoff (MG 4648)
Frank P. Tiscione (FT 5396)
926 RXR Plaza
Uniondale, New York  11556
(516) 357-3000

*Counsel for Plaintiffs Government Employees Insurance Company, GEICO Indemnity Company, GEICO General Insurance Company and GEICO Casualty Company*